UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONALD L. PAXSON,

        Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

        Defendants.

Civil Action No. 13-cv-00597 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, Donald L. Paxson, who is proceeding *pro se*, filed this suit seeking a copy of a search warrant executed at his residence in Boerne, Texas in June, 2006, pursuant to "The Freedom of Information ["FOIA"] and Privacy Acts, 5 U.S.C. § 552 and 5 U.S.C. § 552 (a)." Compl., ECF No. 1, at 1 (Heading) and ¶¶ 3,7, 11 (referring to request for copy of the search warrant).[1] Following a search for records responsive to the plaintiff's FOIA request, the defendants, the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), located no responsive documents and now seek summary judgment in their favor.[2] The plaintiff contests the adequacy of the search because responsive documents "did in fact exist . . . at some point." Pl.'s Opp'n to Defs.' Mem. Supp. Mot. Summ. J. ("Pl.'s Opp'n"). For the reasons set out below, the defendants' motion for summary judgment is granted.

---

[1] The plaintiff's original FOIA request, dated August 22, 2012, underlying the instant suit, also requested "a copy/list of ALL items seized as evidence during my arrest," but the Complaint makes no reference to that portion of the request. Compl., Ex. 1 at 2. Apparently, following his arrest, the plaintiff was charged in the United States District Court for the Western District of Texas with Possession and Receipt of Child Pornography, under 18 U.S.C. §§ 2252A(a)(5)(B) and 2252(a)(2). Decl. of David M. Hardy, Section Chief, Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD") ("Hardy Decl."), ECF No. 12-3, ¶ 23.

[2] The defendants' search uncovered nineteen pages of non-responsive records, which were produced to the plaintiff "as a courtesy although [the defendants] ha[ve] no legal duty to produce them." Defs.' Mem. Supp. Mot. Summ. J., ("Defs.' Mem."), at 1, ECF No. 12-1.

## I. BACKGROUND

Upon receipt of the plaintiff's FOIA request, which was directed to the FBI, the FBI requested additional information from the plaintiff to facilitate the conduct of an accurate search of the FBI's Central Records System ("CRS"). Decl. of David M. Hardy, FBI Section Chief, Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD")("Hardy Decl."), ECF No. 12-3, ¶ 6. The plaintiff provided the requested additional information and clarified that he was "looking for the search warrant and the search warrant return and the inventory list of what was taken, and the affidavit from agent [illegible], and the indictment." *Id.* ¶ 7, Ex. C.

The CRS is a records management system used by the FBI primarily as an investigative tool but also "to conduct searches that are likely to yield documents responsive to FOIA and Privacy Act requests," including documents located at FBI Headquarters and all field offices. *Id.* ¶¶ 13, 19. The defendants conducted an automated search of the CRS in order to locate any responsive documents using "variations of a phonetic breakdown of the [p]lantiff's first, middle, and last name," as well as the "plaintiff's date of birth and social security number." *Id.* ¶ 19. No responsive documents were located, however. *Id.* ¶ 20.

The plaintiff was notified that no responsive records were located and he filed an administrative appeal of the FBI's "no record" response, *id.* ¶ 20, Ex. E, stating that he did "not believe the FBI performed an adequate search for the copy of the Search Warrant (5:06-391-M) [he] requested." Hardy Decl, Ex. F (Pl.'s Letter, dated November 9, 2012, filing appeal to DOJ's Office of Information Policy). The plaintiff subsequently filed this action, on April 29, 2013, seeking relief under FOIA and the Privacy Act. Shortly thereafter, in July 2013, the FBI conducted a second search of the CRS for "'reference entries,' . . . sometimes called a 'cross-

reference,'" which covers information mentioned or referenced "in a document located in another 'main' file on a different subject matter." *Id.* ¶ 14. This search "located one potentially responsive cross-reference." *Id.* ¶ 20. Upon further examination, the defendants determined that the cross-reference was not responsive but "as a courtesy," the FBI has released nineteen pages of cross-referenced records, with redactions, under FOIA Exemptions (b)(6) and (b)(7)(C), of names and other identifying information, like telephone numbers, of FBI Special Agents and support personnel. *Id.* ¶¶ 20-21, 35-39, Ex. H. The plaintiff does not challenge these redactions. *See* Pl.'s Opp'n at 2 (stating "[he] has no interest in knowing the names of any agents assigned to his investigation").

The defendants have now moved for summary judgment. Defs.' Mot. Summ. J., ECF No. 12. As noted, the plaintiff opposes this motion, which is now fully briefed for resolution.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT IN FOIA CASES

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). With respect to the applicability of exemptions and the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations. *See, e.g.*, *Am. Civil Liberties Union v. U.S. Dep't of Def.* (*ACLU/DOD*), 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001). Summary judgment is properly granted against a party who, "after adequate time for discovery and upon motion, . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Id.* at 323.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in favor of the nonmoving party and shall accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record." FED.R.CIV.P. 56(c)(3). For a factual dispute to be "genuine," the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [its] position," *Liberty Lobby*, 477 U.S. at 252, and cannot rely on "mere allegations" or conclusory statements, *Veitch v. England*, 471 F.3d 124, 134 (D.C. Cir. 2006); *see Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *accord* FED.R.CIV.P. 56(e). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See, e.g.*, FED.R.CIV.P. 56(c)(1). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

### III. DISCUSSION

The plaintiff challenges the adequacy of the defendants' search for responsive records on two grounds. First, he challenges the defendants' "no records" response because he stands convicted of a crime resulting from execution of the search warrant, which is the subject of his FOIA request and which he posits must exist. Pl.'s Opp'n at 1. Relatedly, the plaintiff points out that in fulfilling their search obligations the defendants "have an obligation" to construe the FOIA request broadly, "review all records located and, to release any segregated material." *Id.* Second, the plaintiff appears to contend that the defendants had an obligation to review any

records provided by the Immigration Custom Enforcement or "notif[y] Immigration to determine if that Agency had any objections to any records being released." *Id*. at 2. Neither of these challenges to the search has sufficient merit to defeat the defendants' motion for summary judgment.[3]

First, the plaintiff challenges the adequacy of the defendants' search because no responsive documents were found despite "the fact that the [p]laintiff is convicted and currently incarcerated proves that at some point, presumably, a search warrant did in fact exist." Pl.'s Opp'n at 1. This contention misconceives the standard for the adequacy of an agency's search under the FOIA.

An agency's search obligations are dictated by whether the scope of the search is "reasonably calculated to uncover all relevant documents," *Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007), a standard that an agency satisfies by searching "all files likely to contain responsive materials (if such records exist)," *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The mere fact that an agency's search failed to uncover a document that should or did exist is simply not enough to establish an inadequate search. To the contrary, the

---

[3] The plaintiff asserts in his complaint that he is bringing claims under the Privacy Act, 5 U.S.C. § 552a. As the defendants correctly observe, the "Complaint only mentions the Privacy Act in the jurisdictional statement" and nowhere "even allege[s] that the FBI violated his rights under the Privacy Act in any respect." Defs.' Mem. at 4. The Court is unable to glean from this *pro se* plaintiff's allegations any possible Privacy Act claim arising from any improper disclosure of information related to the plaintiff. To the extent the plaintiff is relying on the Privacy Act to allege that the defendants' failed to *make* a disclosure required under the Privacy Act, this claim would not be viable. While the Privacy Act directs that federal agencies provide access to records or information pertaining to an individual upon request by that individual when the requested information is maintained in a system of records, *see* 5 U.S.C. §552a(d), this statute also authorizes agencies to promulgate rules exempting any system of records "maintained by an agency . . . which performs as its principal function any activity pertaining to the enforcement of criminal laws." 5 U.S.C. § 552a(j)(2). The FBI has exercised this authority to exempt CRS records from the disclosure obligations under the Privacy Act. *See* 28 C.F.R. § 16.96; *see also Marshall v. F.B.I.*, 802 F. Supp. 2d 125, 134 (D.D.C. 2011) ("CRS records are exempt from disclosure under the Privacy Act . . . [and, therefore,] the Privacy Act does not require that the FBI release any of the records kept in the CRS."); *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 67 (D.D.C. 2013) ("The language of Exemption (j)(2) clearly permits agencies, including the FBI, to exempt entire systems of records from the Act's disclosure provisions, and the only precondition for such an exemption is that the agency . . . must 'perform[] as its principal function any activity pertaining to the enforcement of criminal laws.'"). Consequently, the plaintiff has no cognizable Privacy Act claim against the defendants arising from any failure to disclose records maintained in the CRS.

D.C. Circuit has found that "the fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Crim Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007). The "failure of an agency to turn up one specific document," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), or "mere speculation that as yet uncovered documents might exist does not undermine the finding that the agency conducted a reasonable search for [records]," *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). Thus, even assuming *arguendo* that the plaintiff's incarceration "proves" that a responsive search warrant existed "at some point," Pl.'s Opp'n at 1, that "does not mean that [the search warrant] remain[s] in the [defendants'] custody today or that the [defendants] had a duty under FOIA to retain the record[]." *Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004) (citing *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("A requester is entitled only to records that an agency has in fact chosen to create and retain.") (citations omitted).

The plaintiff is correct, as the defendants concede, that "an agency . . . has a duty to construe a FOIA request liberally." *Nation Magazine, Wash. Bur. v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 544-45 (D.C. Cir. 1990) (other citations omitted). This legal duty on the part of an agency has no effect, however, on yet another legal principle applicable to FOIA cases that "[t]he adequacy of a FOIA search is generally determined not by the fruits of the search but by the appropriateness of the methods used to carry out the search." *Scaff–Martinez v. Drug Enforcement Admin.*, 770 F. Supp. 2d 17, 21–22 (D.D.C. 2011) (quoting *Iturralde*, 315 F.3d at 315). In this case, the FBI communicated with the plaintiff to obtain information that would help facilitate an accurate search and then conducted a broad automated search of the CRS using variations of the plaintiff's name and

other personally identifiable information. Hardy Decl. ¶ 19. The FBI followed up with a second search for responsive records, which was sufficiently thorough and broad to uncover non-responsive records pertaining to the plaintiff, which records were disclosed. *Id.* ¶¶ 20-21. These efforts amply demonstrate the adequacy of the search conducted here. This conclusion is entitled to "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs.*, 926 F.2d at 1200.

Second, the plaintiff appears to object to the adequacy of the defendants' search because the defendants "had an obligation to review those records" that "[t]he FBI compiled . . . by reason of its cooperation with Immigration Custom Enforcement." Pl.'s Opp'n at 2 (citing Defs.' Mem. 2 n.1). The plaintiff's reference to Immigration Custom Enforcement ("ICE"), which is not an agency within the defendant DOJ or defendant FBI but a separate agency within the Department of Homeland Security, is predicated on the defendants' indication in a footnote in its moving brief that the investigation of the plaintiff resulted from cooperation with ICE, "which conducted a law enforcement initiative called Project Safe Childhood . . . 'to combat the proliferation of technology-facilitated exploitation crimes against children.'" Defs.' Mem. at 2 n.1 (quoting Hardy Decl. ¶ 31). Even if ICE had some involvement in the investigation of the plaintiff, this does not undermine the adequacy of the search undertaken by the defendants. Given the thoroughness of the defendants' search across the CRS, including in cross-referenced files, nothing in this reference to ICE suggests that the defendants held responsive records that would have warranted or triggered a referral to another agency.

Moreover, while an "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested," *Oglesby*, 920 F.2d at 68, the FOIA only requires agency records to be disclosed that are "under [the agency's] control at the time the

request is made." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 146 (1989); *see also Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 152 (1980) (stating that FOIA "only obligates [agencies] to provide access to those [documents] which it in fact has created and retained"). Thus, to the extent that plaintiff is claiming that ICE's record systems should have been searched, those systems are not within the defendants' control. *See Kissinger*, 445 U.S. 136, 151-52 (1980) ("FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control."); *Landmark Legal Found. v. Envtl. Prot. Agency*, 272 F. Supp. 2d 59, 66 (D.D.C. 2003) ("It is well settled that a FOIA request pertains only to documents in the possession of the agency at the time of the FOIA request."). The plaintiff must submit a FOIA request to ICE should he wish to obtain records he believes are maintained by that agency. *See Feinman v. F.B.I.*, 269 F.R.D. 44, 51 n. 4 (D.D.C. 2010) ("[o]ne person can make multiple [FOIA] requests").

## IV. CONCLUSION

For the foregoing reasons stated, the Court concludes that "there is no genuine dispute as to any material fact," FED. R. CIV. P. 56(a), regarding the adequacy of the defendants' search for responsive records in response to the plaintiff's FOIA request. Accordingly, the defendants' motion for summary judgment is GRANTED. An order to this effect accompanies this Memorandum Opinion.

Date: May 14, 2014

_____
BERYL A. HOWELL
United States District Judge